THE TERRITORY OF NEW MEXICO V. JOSEPH STOKES AND WILLIAM MULLEN.

*January 13, 1881.*

In order to obtain a decision of the supreme court on the question whether the office of attorney-general of New Mexico was vacant or not at the January, 1881, term, when the case of *The Territory of New Mexico v. Joseph Stokes and William Miller* was called, both Judge Waldo and Mr. Fiske appeared, claiming to represent the territory as attorney-general.

The case was submitted on an agreed statement of facts.

*By the Court*—BRISTOL, J.: This is a case of burglary under the laws of the territory, and is here upon appeal from the judgment and sentence of the district court for the county of Santa Fe, in the first judicial district.

It is a case, therefore, in which the attorney-general of the territory, if there be such an officer, should appear on behalf of the territory.

The cause having been called for hearing in its order, Hon. Henry L. Waldo and Eugene A. Fiske, Esq., both being attorneys and counsellors of this court, appear, each claiming as against the other the right to appear as attorney-general and to be recognized by the court as such. They respectively submit their commissions showing the authority under which they claim the office, also a statement of facts agreed upon showing the occasion and circumstances for and under which their respective commissions were executed and issued, and ask the judgment of the court thereon as to which or either of them is attorney-general.

These facts, as agreed upon, so far as is necessary to determine the question involved, are substantially as follows:

1st. That during the recess of the legislative assembly of the territory next preceding the last session thereof, said

Waldo was appointed and commissioned as attorney-general to fill the then existing vacancy in the office occasioned by the resignation of his predecessor, Hon. William Breeden. That said Waldo is still alive and has never resigned.

2d. That at the then next session of the legislative assembly of the territory, which was the last session, and on the last day thereof, the governor of the territory nominated said Fiske for the office of attorney-general to the legislative council. That the said council on that day voted upon the question of confirming said nomination and thereby voted against and refused to confirm the same.

That thereafter, upon the same day, and after a consideration of said vote, said council again voted upon the question of confirming such nomination, and thereby again voted against and refused to confirm the same.

And that thereafter, on the same day, the governor again nominated said Fiske for said office to said council, but such nomination did not come before said council in executive session, and said assembly adjourned on that day, *sine die*, without any action having been taken by such council upon said last nomination.

3d. That thereafter, and after the termination of the said session of the legislature, the governor of the territory on his sole authority, executed and delivered to said Fiske a commission purporting to authorize and empower him to hold and perform the duties of said office.

By neglecting to nominate any one to the council to fill a vacancy, he might by his own act create the contingency wherein he could fill the office under all circumstances independently of the council, and in this way entirely ignore the provisions of law placing restrictions upon his patronage; or he might create such a contingency by repeatedly nominating the same candidate whom the council refuse to confirm, and then after the adjournment of the legislature appoint the rejected candidate.

We do not hesitate to say that all this would be in direct

Territory of New Mexico v. Stokes and Mullen.

contravention of the spirit, policy and object of the law. And that the general grant of power to the governor to "take care that the laws be faithfully executed," was not intended to cover cases of this kind.

Mr. Fiske claims title to the office upon still another ground, which is that the governor had authority to appoint him under the circumstances, by virtue of the act of congress of 1872 (U. S. Rev. Stat., sec. 185), which provides as follows:

"In any of the territories, whenever a vacancy happens from resignation or death during the recess of the legislative council, in any office which under the organic act of the territory is to be filled by appointment of the governor by and with the advice and consent of the council, the governor shall fill such vacancy by granting a commission which shall expire at the end of the next session of the legislative council."

This act covers the office of attorney-general.

It is contended in behalf of Mr. Fiske's appointment, that inasmuch as the recess appointment of Mr. Waldo was to fill the vacancy occasioned by the resignation of his predecessor, such vacancy continued after the expiration of Mr. Waldo's commission, and that by reason of such continuation into the recess commencing at the end of the last session of the council, the governor had the authority to fill such vacancy by Mr. Fiske's appointment under such act of congress.

This construction of the provisions of that act cannot be upheld.

" The governor shall fill such vacancy by granting a commission," etc., is the language of that act.

If the vacancy was so filled by the appointment of Mr. Waldo, and he was thereby *de jure*, as well as *de facto*, constituted an attorney-general, of which there can be no doubt, then there could be no further continuance of that particular vacancy. So far as filling that vacancy was concerned, the

governor's authority had been exercised and exhausted by Mr. Waldo's appointment.

Under the circumstances, therefore, this act of congress conferred no authority on the governor to support Mr. Fiske.

Upon the foregoing facts we are asked to declare the law applicable to the question involved.

One of the grounds upon which Mr. Fiske claims title to the office is that the governor was duly authorized to appoint and commission him under the circumstances, by virtue of a law passed by the territorial legislature in the year 1854, which provides:

"That in all cases wherein the governor is or may be authorized by law to make appointments, by and with the advice and consent of the council, he is hereby authorized to make such temporary appointments during the recess of the legislative assembly to continue until the meeting of the same."

The terms of this act are broad enough to cover every conceivable contingency under which a vacancy might occur, and to authorize the governor, during a recess of the legislature, to make an appointment filling the same.

But was this territorial law, or any part of it, ever within the legislative powers granted by congress, and therefore valid?

The act of congress providing for a territorial government for New Mexico, commonly called the organic act, provides that "all township, district and county officers, not herein otherwise provided for, shall be appointed, or elected, as the case may be, in such manner as shall be provided by the governor and legislative assembly.

"The governor shall nominate, by and with the advice and consent of the legislative council, and appoint all officers not herein otherwise provided for."

The organic act further provides as follows:

"The legislative power of the territory shall extend to all rightful subjects of legislation consistent with the constitution of the United States, and the provisions of this act."

Territory of New Mexico v. Stokes and Mullen.

The restriction here as to consistency with the constitution would include the laws of congress warranted by the constitution.

The foregoing provisions of the organic act contain all the powers granted to the legislative branch of the territorial government, so far as the office of attorney-general was concerned, at the time these appointments were made.

The office of attorney-general is a territorial, and not a township, county or district office. And when we consider the fact that congress has invested the legislative branch of the territorial government with ample power to provide by law for filling any vacancy that may occur in a township, county or district office, and has withheld such power as regards territorial offices, and instead thereof has provided by express law how such territorial offices shall be filled, it follows by necessary and unavoidable implication that the territorial legislature has no power to provide by law any other or different mode of filling a vacancy in the office of attorney-general.

And such act of the territorial legislature would be inconsistent with the provisions of the organic act, and thereby excluded from its present legislative powers.

The law passed by such legislature on the subject, and above referred to, therefore is null and void and conferred no authority on the governor to appoint Mr. Fiske under the circumstances: 1 Montana Reports, 252.

Mr. Fiske claims title to the office on another ground, which is that the governor had authority to appoint him under the circumstances by virtue of that provision in the organic act which makes it his duty to "take care that the laws be faithfully executed." The answer to this is:

1st. The office of attorney-general, though no doubt a convenience, is not a necessary incident to the executive department of the territorial government, and

2d. Such appointment is in contravention of the law.

If the principle here contended for in favor of sustaining

this appointment be maintained, then the governor has the whole matter of appointments of this description in his own hands.

The appointment of Mr. Fiske being without authority of law, and therefore void, Mr. Waldo comes in and claims title to the office upon the sole ground that in the absence of express affirmative provisions by statute, giving appointees like himself the right to hold over beyond the expiration of their commissions, he has, on sound principles of law, based upon public majority, the right to so hold over until his successor shall have been appointed by the governor, with the advice and consent of the legislative council, there being no other legal mode of appointing his successor.

In support of this proposition the cases of *Stratton v. Oulton*, 28 Cal., 44, and the *People v. Stratton*, 28 Cal., 383, with the cases therein referred to as recited authority.

The broadest application that can be made of the principles contended for, as enumerated by these California decisions, is that when a statute in general terms provides that the regular term of an officer shall be a certain period of time, and contains no express provisions that the incumbent may hold over at the expiration of his term until the office be filled by his successor, then such incumbent if elected or appointed as contemplated by law for and during such regular term, may, *ex necessitate*, hold over until his successor is so elected or appointed.

If, for instance, the law fixing the regular term of office of auditor-general at two years contained no provision that the regular appointee for any such term might hold over, and if under such a law Mr. Waldo, instead of holding the office under a recess appointment, had been appointed by the governor with the advice and consent of the council, for the regular term, then a failure of an appointment in like manner of a successor at the end of the term, he might hold over *ex necessitate*.

But this salutary principle of law, based upon public

necessity, can have no application to a recess appointment like that of Mr. Waldo's under said act of congress.

In the case of *McCall v. Byram Manufacturing Co.*, 6 Conn., 427, where this subject is discussed at length, the principle was affirmed and cited with approval in these California decisions, that a statute might be so restrictive by the expression or implication of a negative as to terminate the holding of an office at a specified time.

The act of congress under which Mr. Waldo was appointed is a statute of this description.

The language of the act is, " The governor shall fill such vacancy by granting a commission which shall expire at the end of the next session of the legislative council."

What language could be employed that would be more restrictive by the implication of a negative; or would more clearly express on the part of congress that the incumbent should not hold over upon the expiration of his commission?

The object and policy of the law as expressed in the act of congress aforesaid, and the provisions of the organic act regarding this class of officers, are obvious.

Except in the two contingencies specified they are to be filled by the joint concurrence of the governor and council.

But if an incumbent holding an office of this kind under a recess appointment has the right to hold over, then, the governor making any such appointment has it in his power to keep the office filled by neglecting to make any nomination to the council, or otherwise conferring with that body on the subject.

It was, no doubt, the intention of congress to prevent this by so restricting the patronage of the governor that the recess appointments he is authorized to make shall, unconditionally, terminate at the end of the next session of the legislative council, and that he shall have no authority to make recess appointments to offices of this description except when vacancies occur by death or resignation.

We all concur, therefore, in the opinion that neither Mr.

Waldo nor Mr. Fiske is entitled to the office of attorney-general, and that the office is vacant.

The application of each to appear as that officer is denied.